## CANTON STEEL ROOFING Co. *v.* KANNEBERG *et al.*

*(Circuit Court, N. D. Ohio, E. D.* May, 1892.)

1. PATENTS FOR INVENTIONS—PARTIAL ASSIGNMENT.
    In a suit for infringement it was stipulated that the patent in suit "is owned by the complainant, except the county of Knox, Ohio." *Held,* that even if this be taken to mean that there had been, not a license merely, but a complete assignment of the monopoly in Knox county, plaintiff still retained full title with that exception, and could sue for infringement elsewhere, without joining the assignee for Knox county as a party plaintiff.

2. SAME—INJUNCTION—ACCOUNTING.
    A failure to prove actual infringement before the filing of the bill, although such infringement is averred in the bill, does not require the dismissal of the bill as prematurely brought, or prevent a decree for an injunction and an accounting of profits and damages for infringements subsequent to the filing of the bill and before decree, if the bill also avers anticipated infringements, and prays for injunction and general relief; for the right to injunction rests entirely upon anticipated infringements, and the right to recover damages for infringement between the filing of the bill and the final injunction is incidental to the injunction, and necessary to make the remedy complete.

3. SAME—ANTICIPATION—SHEET METAL ROOFING.
    Letters patent No. 188,079, issued March 6, 1877, to Henry W. Smith, for an improvement in sheet metal roofing, comprises a means for making a water-tight joint, and for securing the sheets firmly to the roof boards. This is done by means of an anchor piece of sheet metal, rectangular in form and bent at right angles, so that when one part is nailed to the roof the other stands upright. The adjoining sheets of roofing, when laid in position, have upright flanges of unequal height, the anchor piece being between them. The vertical portion of the anchor piece is split centrally, and one leg thereof is folded down over the shorter flange. On the higher flange a hem is turned down so as to embrace the top of the other leg, and then these parts are folded down over the shorter flange and anchor piece, thus completing a joint of six or seven thicknesses of metal. All these elements are old, and the claim is for a combination. *Held,* that the patent is valid, and not anticipated by the Boesch or the Diehl patents, (No. 2,850, issued March 12, 1842, and No. 99,656, issued February 8, 1870,) both of which, while resembling it in the split anchor and flanges of unequal height, require the folding of several thicknesses of metal at once; or by the Trissler & Stewart patent, (No. 15,988, issued October 28, 1856,) which has a solid anchor with a scroll, which fits into a similar scroll in the upper flange, while the scroll of the lower flange is inserted thereunder, thus forming a tubular joint.

4. SAME—INFRINGEMENT.
    Complainant's patent is infringed by the device made under letters patent No. 403,844, issued May 21, 1889, in which a tongue is punched out of the central portion of the anchor and bent over in such manner as to embrace the lower flange, while the entire top of the anchor is embraced by the hem of the higher flange, and is then folded over the lower flange. The two devices operate on the same principle, and the fact that the entire width of the anchor is applied to holding down the sheet with the higher flange is immaterial, it not appearing that the one leg of complainant's device was not entirely sufficient for that purpose.

In Equity. Bill by the Canton Steel Roofing Company against Alvin C. and William Kanneberg, doing business as the Kanneberg Roofing Company, to restrain infringement, and for an accounting, as to letters patent No. 188,079, issued March 6, 1877, to Henry W. Smith, for an improvement in sheet metal roofing. Decree for complainant.

*Mr. Bond* and *M. D. Leggett*, for complainant.

*Chas. R. Miller* and *Sherman, Hoyt & Dustin*, for defendants.

Before TAFT, Circuit Judge, and RICKS, District Judge.

TAFT, Circuit Judge. This is a bill in equity to enjoin the alleged infringement of a patent for an improvement in sheet metal roofing. The defenses raised by the answer and on the proofs are—*First*, that complainant has not title to the patent relied on; *second*, that no manufacture of the alleged infringement by the respondents occurred previous to the filing of the bill; *third*, that the patented device relied on by complainant has no novelty; *fourth*, that the improvement in sheet metal roofing manufactured by respondents since the filing of the bill is not an infringement of the patent sued on, but is a new and different device, itself protected by a patent.

Of these defenses in their order:

1. The bill avers that the patented device relied on was invented by one Henry W. Smith, and that from Smith, by mesne assignments, duly recorded, the title to it became vested in the complainant. The answer denies the title. On page 7 of complainant's record is this stipulation: "It is stipulated by counsel for the parties that the above-mentioned letters patent is owned by the complainant, except the county of Knox, state of Ohio." It is argued by respondents' counsel that this does not show a sufficient title in complainant to maintain its bill. We cannot agree with the contention. Even if the stipulation be taken to mean that complainant, or one of its predecessors in the title to the patent, conveyed, not merely a license, but the entire and exclusive right to the monopoly, in the county of Knox, so that it was *pro tanto* a complete assignment, there remains in the complainant full title to the patent, with that exception. *Gayler* v. *Wilder*, 10 How. 494. The exception is simply a failure of title so far as infringements in Knox county, Ohio, are concerned, and cannot destroy complainant's right to enjoin infringements everywhere else. Nor is the assignee for Knox county a necessary party. He and the complainant are not joint owners or owners in common. Their interests in the patent are distinct and separable.

2. The second defense has no more merit than the first. The bill alleges that respondents made sundry specimens of sheet metal roofing containing complainant's device, and that they have made large amounts thereof; and, further, that it fears, and has reason to fear, that, unless the respondents are restrained by a writ of injunction, they will continue to make and vend large amounts of said metal roofing, and thereby will cause irreparable injury to complainant's rights. The infringement is denied by the answer. The agreement of counsel as to respondents' manufacture was as follows:

"It is also stipulated and agreed that Exhibit A represents the different parts of the roof now manufactured by respondents before the seam is formed; that Exhibit B represents the different parts of the roof, and their relation to each other, when the first fold, or hem, is formed; and that Exhibit C represents the seam of the roof, together with its different parts, properly formed.

It is also stipulated and agreed that the respondents had distributed samples like this Exhibit D now produced, and had solicited orders, but had not in fact completed any roof prior to the filing of the bill in this cause, but have since made roofs like Exhibits A, B, and C."

It is said that even conceding that sample Exhibit D was a sample of a roof which, when made, would be an infringement of complainant's patent roof, and that A, B, and C, made after the filing of the bill, were such infringements, nevertheless the manufacture of a mere sample was not an infringement, and, no such roofs having been made before the filing of the bill, the averment of the bill is not sustained as to infringements, and it must be dismissed and a new bill filed. The bill prays— *First,* for an injunction; *second,* an accounting for profits and damages; and, *third,* general relief. The right to an injunction rests, not on past infringements, but on anticipated and threatened infringements. The bill avers reasonable ground for fearing such future infringements, and the stipulation fully sustains the averment. A failure to show infringements prior to the filing of the bill is unimportant in its effect upon complainant's rights, except upon the question of damages. The right to recover damages for infringements between the filing of the bill and the final injunction is incidental to the right to an injunction, and is required to make the remedy complete. The view we take of the bill and the sufficiency of the proof upon the point mooted is fully sustained by Judge JACKSON's opinion in *Page Woven Wire Fence Co.* v. *Land,* 49 Fed. Rep. 936. The bill is a bill *quia timet,* and does not depend upon actual damage, but on anticipated injury to the right sought to be protected.

3. It is said the device of the complainant's patent has no novelty. The device is for making a water-tight joint between the successive metal sheets to constitute the roof, and for securing them firmly to the roof boards. This is done with the aid of a small rectangular piece of the sheet metal called the "anchor," which is bent so that its two parts make a right angle. One part, or the base, is nailed to the roof board, giving the other a vertical position. Flanges are turned on the sheets to be jointed, so that when the sheets are laid upon the roof, flange to flange, with the vertical part of the anchor inserted between the flanges, the top line of one flange shall be higher than the anchor, and that of the other flange shall be lower. Thus laid, one of the sheets will cover the base of the anchor and its securing nails. The vertical part of the anchor is split centrally from its top line down to a point opposite the top line of the lower flange. One of the divisions of the anchor thus made is folded completely over the lower flange, while the higher flange, running up above the other half of the anchor, is folded over that half. The fold or hem of the anchor over the lower flange holds the flange and the sheet, of which it is a part, to the roof. The fold or hem of the higher flange, however, is folded over the anchor, and is, of course, not held down thereby, for any upward pressure on the sheet would lift the hem off the anchor. To secure the sheet with the higher flange to the roof, one more fold is necessary. The higher flange, with the part of

the anchor which it embraces in its fold or hem, is bent or folded over the other half of the anchor and the lower flange. This turn reverses the relative positions of the first hem of the higher flange and the anchor end it embraces, so that now the hem opens upward, and the anchor end is turned downward into the hem, thereby holding the hem, flange, and sheet to the roof. The second turn of the higher flange does not bend or change the positions of the l( ver flange and the half of the anchor folded over it. Thus both sheets are secured to the roof, the nails of the anchor are concealed, and the six or seven thicknesses of the metal folded together prevent all longitudinal motion, except enough to allow for expansion and contraction without breaking the joint.

The claim of the complainant in the patent sued on (No. 188,079, dated March 6, 1877) is as follows:

"In sheet metal roofs, the sheets, A, having flanges, $a$, $b$, of unequal width, and the wider turned at C, in combination with anchor, $d$, having divisions, $e$, $f$, the one, $e$, bent over flange, $b$, and the other, $f$, bent with flange, $a$, over flange, $b$, substantially as and for the purpose specified."

The claim is for a new combination of parts, which were all old at the time of the patent. Split anchors like those here described had been used before. Flanges of unequal width, turned on the sheets like these, had been used in connection with a split anchor before. The question is whether the present combination had ever been used before. There are three patents only which need to be examined in this connection. The first is the Boesch patent, No. 2,850, dated November 12, 1842. In this patent the anchor was not split. The flanges were of unequal width, one wider and one narrower than the anchor. The anchor was folded over the narrower or lower flange, and the wider or higher flange was folded over these two, and then the whole joint, $i. e.$, both flanges and the anchor, are folded over again. This made eight thicknesses of metal in the joint. The higher flange was folded twice, the anchor was folded twice, and the lower flange was folded once. In complainant's patent the thicknesses of metal in the joint are six, or, at the most, seven. The higher flange is folded twice, the anchor is folded once, and the lower flange not at all. It is not necessary to point out that the formation of the joint in complainant's patent is much less clumsy than that in Boesch's patent. In Boesch's patent the final fold was of all the material in the joint, while in the complainant's patent it is of one leg of the anchor and the higher flange. The difference in the force required for the one and the other must be very marked. The strain on the metal in the Boesch patent in the more frequent folds must be greater than in complainant's patent, and its effect can only be avoided, it would seem, by making the flanges and the anchor higher, and thus using more metal. I am quite clear that, while there is some similarity between the two patents, the patent of the complainant is simpler, more useful, than the Boesch patent, and involves a different combination of the elements.

The next patent is that of Trissler & Stewart, No. 15,988, dated October 28, 1856. In this patent the edge of one sheet is formed into a scroll. A solid anchor with a similar scroll is inserted into the scroll of the

sheet, and nailed down. The next sheet has its edge slightly turned twice in oblique angles to itself, so as to permit its insertion under the scrolls of the other sheet and the anchor, and its resting against the inside top of the scroll of the anchor. The joint thus made is an open, or rather a tubular, one. This joint has given us more trouble than any other on the claim of anticipation. In a certain sense, the anchor exerts its holding-down power on the two sheets in the same way as in the complainant's patent. It operates by one fold directly on the lower sheet, and by what is perhaps equivalent to two folds on the other. It is not, however, a closely locked joint, like complainant's; it has not the bifurcated anchor. Nor could it be made a closely locked joint like complainant's by simply compressing the scrolls into a flat fold. The bifurcation of the anchor seems necessary to accomplish the same operation of the anchor on both sheets in a flat joint. We are of opinion, therefore, that the combination in the Trissler & Stewart patent is not an anticipation of complainant's combination. The construction and form are both quite different, and the resulting joint is not the same.

The only other patent which it seems necessary to comment on is the Diehl patent, (No. 99,656, dated February 8, 1870.) In this device the flanges of the adjoining sheets are of unequal width, and the anchor is a split anchor. When in position, however, the anchor in one leg is higher than the wider flange, and in the other leg is higher than the lower flange. The higher leg is folded over the higher flange, and the lower leg over the lower flange. The higher leg and flange are then folded over the lower leg and flange. This does not secure the higher flange and sheet to the roof, for it can be lifted out of the embrace of the higher leg. It is necessary, therefore, to turn the whole joint over on itself once. This makes a joint of eight thicknesses of metal, to produce which the anchor is folded three times, the higher flange twice and the lower flange once, or six folds in all. The only difference between this joint and the complainant's is that the higher leg of the anchor is long enough to be folded over the higher flange, while in the complainant's joint it is shorter, and the higher flange is folded over it. This seems a small difference, but the result is that the complainant does not turn the whole joint over at all, makes only six, or, at most, seven, thicknesses of metal in the joint, while the folds of metal are only three instead of six. This is a wide difference, so far as concerns danger of breaking or straining the metal, ease of manipulation in making the folds, and simplicity in the resulting joint. The resulting combination in complainant's device is certainly very different from that of the Diehl patent, although the difference begins in so slight a change. Nor can it be said that the turning of the higher flange over the anchor, instead of the reverse, is a change of the combination of parts in the Diehl patent which does not involve patentable invention. The discovery or perception that a slight change in a known combination will produce a wide and valuable difference in results necessarily involves the inventive faculty, which it was the object of the patent laws to encourage.

On the whole, then, we think that complainant's combination patent is not void for want of novelty or patentable invention. It has been in general and successful use for more than 10 years, which tends to show its value as an invention.

4. We come now to the question of infringement. The defendants were employes of the complainant, and were entirely familiar with the complainant's device and its operation. The defendant's patent was No. 403,844, dated May 21, 1889. The claim for the patent is as follows:

"In devices for securing sheet metal roofing in position, the combination, with two adjacent upturned flanges, of the sheets of metal of different heights, of an anchoring piece secured at one end to the roof and projecting up between the said adjacent flanges of the sheets of metal, the anchoring piece having a tongue partially severed therefrom, the base of the tongue being located at the upper edge of the lowermost of the two upturned flanges, the top of the anchoring piece being embraced by a folded-over edge of the higher of the two upturned flanges, and the opening formed in the anchoring piece by the partial severing of the tongue therefrom, being free to receive the tongue of the finished seam, substantially as set forth."

The sole difference between this device and the complainant's is in the anchor. The unequal flanges, and the anchor higher than one flange, and lower than the other, are folded in the same way, and the same joint is made. The anchor is bifurcated in both cases. In defendants', one leg is punched out of the middle of the vertical piece, while in complainant's it is cut out of the side. The two parts of the anchor in holding down the two sheets by their flanges perform exactly the same functions, in exactly the same way. It is said that defendants' form of anchor makes the joint but six thicknesses of metal, while in complainant's device there are seven. This is an error. If the legs of the anchor of the complainant's patent were of equal length from the point of splitting, undoubtedly the leg folding over the lower flange would not in the completed joint resume its place in the same plane with the other leg, enfolded by the higher flange, for the lip of the higher flange would prevent. This would make seven thicknesses of metal. But, in the drawings which accompany the complainant's specifications, it is perfectly evident that the legs of the anchor, when inserted in the joint, are of unequal length, so as to permit the leg enfolding the lower flange to be pressed under the lip of the higher flange, and to take its position in the same plane as that of the other leg, making the thicknesses of the metal only six. The separate figure of the anchor in complainant's drawings does not show the difference in length of the legs of the anchor, but the other figures showing the combination do, and the evidence is that the model did. Moreover, it is indisputable that for twelve years complainant has been making its anchor with legs of different lengths to attain the very result which defendants claim as the ground for a patentable difference between their device and that of the complainant's. It is true that complainant has made its anchors both ways, and does still, which would show that the difference is not material. But, if there is any value in this feature, it was known

and used long before defendants patented it, and cannot now make the difference between the two combinations which shall prevent infringement. It is further urged that the tongue form of bifurcation permits the whole width of the anchor to be applied to holding down the hem of the wider flange, while in the split form only one half of the anchor is so applied. In practical operation, it will probably be found that, in the split form of anchor, the parts of the joint will be so pressed together that the shorter leg of the anchor would press down on the lip of the higher flange, and thus that the whole width of the anchor would be applied to holding down the fold of the higher flange. However this may be, the difference in operation, if any, is simply one of degree, which might have been compassed in the split form of anchor by widening the anchor used. Moreover, this change, if it be one, does not remedy any known defect in the complainant's device. In the use of the latter there never has been any complaint that the holding-down strength of the split anchor was not ample for all purposes. In our opinion, therefore, the defendants' devise is, in effect, the same combination as that patented to the complainant's assignor. The variations are produced by merely slight changes in form, without any real difference in function or operation or result. The decree will be for a perpetual injunction, and, as it is in evidence that actual infringements have taken place since the filing of the bill, there will be a reference to a master to take evidence, and report on the damages to complainant.